UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYARTA J. GETER,

        Petitioner,               Case No. 1:15-cv-661

v.                                      Honorable Gordon J. Quist

JEFFREY WOODS,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner is incarcerated in the Chippewa Correctional Facility. He was convicted in the Ingham County Circuit Court of one count of armed robbery, MICH. COMP. LAWS § 750.529;

one count of felonious assault, MICH. COMP. LAWS § 750.82; and two counts of carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.227.

The Michigan Court of Appeals provided the following factual background for the convictions:

> On the evening of May 20, 2012, Dale Tuttle drove to a local party store with his ward, 15 or 16-year-old Kevin Sanders. Sanders waited in the parked vehicle while Tuttle went inside. Defendant approached the vehicle and asked Sanders for a cigarette. He then produced a knife, tapped the edge of the open vehicle window, and demanded Sanders's money. Sanders took $15 from his wallet and gave it to defendant. Defendant walked away before Tuttle exited the store and reentered the vehicle.
>
> As Tuttle and Sanders drove away, Sanders recounted the tale of his robbery. Tuttle immediately returned to the store. He approached defendant in the parking lot and ordered defendant to return the money. Defendant refused. Defendant pulled out a pocket knife but Tuttle was able to disarm him. Defendant then retrieved a box cutter. To frighten defendant, Tuttle yelled to Sanders to bring out his pistol. Defendant ran away, but was quickly discovered by the police. Defendant was carrying a knife, a box cutter, and $15 when he was arrested.
>
> Defendant was charged with armed robbery in relation to Sanders, felonious assault of Sanders, felonious assault of Tuttle, and two counts of CCW. The jury acquitted defendant of felonious assault in relation to Tuttle.

*People v. Geter*, No. 315987, 2014 WL 2754632, at *1 (Mich. Ct. App. June 17, 2014).

On February 27, 2013, the trial court sentenced Petitioner as an habitual offender, fourth offense, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 180 to 480 months for the armed robbery conviction, 18 to 48 months for the assault conviction, and 18 to 60 months for each of the CCW convictions.

On direct appeal in the Michigan Court of Appeals, Petitioner claimed that the trial court misscored Offense Variables (OVs) 9 and 10 of the Michigan sentencing guidelines. The court of appeals issued an unpublished opinion on June 17, 2014, rejecting Petitioner's claim and affirming Petitioner's conviction and sentence. The Michigan Supreme Court subsequently denied

Petitioner's application for leave to appeal on March 25, 2015.  Petitioner now brings this habeas corpus action rasing the same guideline scoring errors.

## Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-

court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

**Discussion**

Petitioner contends that the trial court misscored OVs 9 and 10 at 10 points each. He argues that, had these variables been correctly scored at zero points each, the sentencing guideline range would have been 108-180 months, rather than 126-420 months. For relief, Petitioner seeks resentencing under the corrected guideline range.

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness

or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447;*United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 447.

        Offense Variable 9, which concerns the number of victims, is governed by MICH. COMP. LAWS § 777.39.  The statute provides:

> (1)    Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
>         * * *
>
>     (c)    There were 2 to 9 victims who were placed in danger of physical injury or death .......................... 10 points
>
>     (d)    There were fewer than 2 victims who were placed in danger of physical injury or death ............................... 0 points
>
> (2)    All of the following apply to scoring offense variable 9:
>
>     (a)    Count each person who was placed in danger of physical injury or loss of life or property as a victim . . . .

MICH. COMP. LAWS § 777.39(1)-(2).

The Michigan Court of Appeals thoroughly reviewed the scoring of OV 9 and found no error on the part of the trial court, stating:

> The Department of Corrections (DOC) initially scored OV 9 at 0 points in relation to defendant's armed robbery and felonious assault convictions. The prosecutor challenged this score, arguing that defendant also placed Tuttle in danger when the guardian tried to retrieve his ward's stolen cash. Defense counsel countered that Tuttle testified that he was not afraid of defendant and that Tuttle was the aggressor in his encounter with defendant. The court agreed with the prosecutor that Tuttle was a second victim and that OV 9 should be scored 10 points. The sentencing information report (SIR) indicates that the court changed the score to 10 points only in relation to the armed robbery conviction.
>
> The circuit court's assessment was legally correct and supported by a preponderance of the evidence. OV 9 "must be scored giving consideration to the sentencing offense alone . . . . OV 9 does not provide for consideration of conduct after completion of the sentencing offense." *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009). Armed robbery is a transactional offense, however, and defendant's acts toward Tuttle in his attempt to retain the spoils are part of the offense. See People v Mann, 287 Mich App 283, 286-287; 786 NW2d 876 (2010) (holding that armed robbery is a transactional offense, including the act of fleeing from the scene).
>
> MCL 750.530 reads in its entirety:
>
> (1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
>
> (2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property. [Emphasis added.]
>
> Accordingly, the sentencing offense—armed robbery—continued after defendant took Sanders's money. Under the plain language of the statute, the crime was ongoing when Tuttle returned to the scene and defendant threatened him with a knife and a box cutter "in an attempt to retain possession of the property."
>
> The OV 9 score was also supported by a preponderance of the evidence. That the jury acquitted defendant of felonious assault against Tuttle does not preclude the

> court's scoring of this variable. A court can find a fact proven by a preponderance of the evidence notwithstanding that a jury found that the same fact was not proven beyond a reasonable doubt. *People v Ratkov (After Remand)*, 201 Mich App 123, 126; 505 NW2d 886 (1993). And defendant does not dispute that he wielded a knife and a box cutter during Tuttle's attempt to regain the stolen property. Accordingly, defendant is not entitled to relief on this ground.

*Geter*, 2014 WL 2754632, at *2.

Petitioner also challenges the trial court's scoring of OV 10, which takes into consideration the "exploitation of a vulnerable victim." The statute provides:

> (1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
>   (a) Predatory conduct was involved ............. 15 points
>
>   (b) The offender exploited a victim's . . . youth or agedness . . . 10 points
>
>   * * *
>
>   (d) The offender did not exploit a victim's vulnerability ............ 0 points
>
> (2) The mere existence of 1 or more factors described in subsection (1) does not automatically equate with victim vulnerability.
>
> (3) As used in this section:
>
>   (a) "Predatory conduct" means preoffense conduct directed at a victim for the primary purpose of victimization.
>
>   (b) "Exploit" means to manipulate a victim for selfish or unethical purposes.
>
>   (c) "Vulnerability" means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation. . . .

MICH. COMP. LAWS § 777.40(1)-(3).

Again, the Michigan Court of Appeals carefully reviewed the claim, and while the appellate court found the scoring of OV 10 to be a closer question, it concluded that the trial court's determination was supported by the record. The court of appeals explained:

> The DOC originally scored 0 points for OV 10. The prosecutor challenged this score, arguing:
>
>> [T]he victim was only 14 or 15 years old at the time. He was alone in a car. I believe circumstantially, if not directly, that's why the defendant chose him out of anybody else that was in the parking lot or present that day to rob, so I think he took advantage of the victim's youth at that time.
>
> Defense counsel objected based on his theory of the defense: that defendant and Sanders knew each other before the offense because defendant was Sanders drug dealer and this case involved a drug deal gone wrong. Based on that theory, no exploitation occurred. The prosecutor retorted that the jury had not accepted that theory, negating defendant's challenge. The court agreed with the prosecutor.
>
> Although the scoring of OV 10 is a closer issue, we do not believe the circuit court clearly erred in its assessment of the record facts. "'To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead fish.'" *People v Cheatham*, 453 Mich 1, 30 n 23; 551 NW2d 355 (1996), quoting *Parts & Electric Motors, Inc v Sterling Electric, Inc*, 866 F2d 228, 233 (CA 7, 1988). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).
>
> At the time of the robbery, Sanders was 15 or 16 years old, not 14 or 15 as stated by the prosecutor. He was 5 feet and nine inches tall and weighed less than 130 pounds. The court was free to infer from the circumstances that defendant did not decide to rob the first person he saw on the day in question. Rather, it was reasonable to infer from the evidence that defendant singled out Sanders because of his young age and gangly stature, and because he was sitting alone in the passenger seat of a parked vehicle with no ready means of escape. Tellingly, defendant did not choose to rob Tuttle, a grown man, who had left the vehicle only moments earlier. Based on this evidence, we are not left with a definite and firm conviction that the court erred in scoring OV 10. The court could conclude that defendant used Sander's readily apparent susceptibility to manipulate him for a selfish purpose—to rob him.

*Geter*, 2014 WL 2754632, at *3.

Petitioner's sentence as a fourth habitual offender of 15 to 40 years is neither arbitrary nor shocking. Further, Petitioner does not argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court's sentencing findings were not sufficiently supported. Such claims fall far short of the sort of egregious circumstances implicating due process. This Court further notes that the trial court imposed a minimum sentence that was toward the bottom of the guideline range. Moreover, Petitioner's minimum sentence of 180 months would be within, albeit at the top of, the guideline range had Petitioner been scored zero points for OVs 9 and 10. Consequently, the state-court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat

anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:  August 24, 2015                               /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE